THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN BODNAR, et al. | : | |
| | : | |
| **Plaintiffs** | : | |
| v. | : | **3:12-CV-1337** |
| | : | **(JUDGE MARIANI)** |
| NATIONWIDE MUTUAL INSURANCE CO. | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.   PROCEDURAL HISTORY

Plaintiff, Stephen Bodnar, individually and t/d/b/a Stephen Bodnar Masonry, brought this

action in the Court of Common Pleas of Luzerne County on June 5, 2012. (Doc. 1-3.) Plaintiff

Bodnar alleged in Count I, a claim against Defendant, Nationwide Mutual Insurance Company,

for bad faith under 42 PA. CONS. STAT. § 8371.  Specifically, Plaintiffs allege that Defendant,

Nationwide, violated the provisions of Section 8371 by, *inter alia*,

> failing to properly conduct a timely and thorough investigation and assessment
> of the cause of the accident of James Berry's injuries and damages; failing to
> properly, objectively and fairly evaluate the claims of Danielle Berry; failing to
> properly evaluate the status of James Berry as an employee of Stephen Bodnar
> and/or Bodnar Masonry; failing to properly evaluate the risk of an excess verdict
> at trial; failing to make any settlement offer to Danielle Berry; failing to properly
> explain to Stephen Bodnar the risk and consequences of an excess verdict;
> failing to pay the policy limits of the Nationwide Mutual Insurance Company
> policy which was purchased by Stephen Bodnar; failing to advise its adjusters of
> proper claims handling techniques as espoused by the Pennsylvania Best
> Practices Manual; failing to follow the mandates of corporate best practices
> claims; failing to properly train adjusters on proper claims handling; failing and
> refusing to properly evaluate and/or pay Danielle Berry's claim for frivolous or
> unfounded reasons; and, ignoring the deposition testimony and other competent

evidence which demonstrated clearly that James Berry was not an employee of Stephen Bodnar and/or Stephen Bodnar Masonry. . . .

(Complaint, ¶ 38 (a)-(l), Doc. 1-3).

In Count II, Plaintiffs allege that Defendant's action in failing to make payment under its indemnity policy issued to the insured to Danielle Berry and the Estate of James Berry presented a violation of the covenant of good faith and fair dealing and such conduct by Defendant was in reckless disregard of the insured's rights, rendering Defendant, AMCO/Nationwide, liable to Plaintiffs for actual and consequential damages.

On July 10, 2012, Plaintiffs' suit was removed to this Court pursuant to 28 U.S.C. § 1441.

Plaintiffs filed an Amended Complaint against Defendant on January 10, 2013 (Doc. 17), again seeking damages in Count I for violation of the provisions of the bad faith statute, 42 PA. CONS. STAT. § 8371 and for breach of contract by Defendant in Count II. Count III of Plaintiffs' original Complaint alleging a violation of the unfair trade practices and consumer protection law, 73 PA. CONS. STAT. § 201-1, *et seq.*, was withdrawn. An Answer to the Amended Complaint (Doc. 20) and an Amended Answer (Doc. 21) were filed by Defendant AMCO/Nationwide on January 24 and 25, 2013. The instant Motion for Summary Judgment by AMCO/Nationwide was filed thereafter.

Before the Court is the Motion for Summary Judgment filed by Defendant, AMCO

Insurance Company (Doc. 22) filed on March 14, 2013.[1]  AMCO seeks the entry of summary

judgment in its favor on the basis that its payment of the policy limits of $1,000,000.00, plus

interest, to settle and resolve in full, the suit brought against its insured, Stephen Bodnar,

individually and t/d/b/a Stephen Bodnar Masonry and Bodnarosa Campground, LLC, by

Danielle E. Berry, individually and as Administratrix of the Estate of James Berry, deceased, in

the Court of Common Pleas of Luzerne County, No. 13484-2010, discharges as a matter of law

its duty to act with the utmost good faith toward its insured in fulfillment of its contractual

obligations under the indemnity policy which it issued to Stephen Bodnar as its insured, and

precludes any statutory bad faith claim under 42 PA. CONS. STAT. § 8371.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

Based upon the Statement of Material Facts submitted by Defendant,

AMCO/Nationwide (Doc. 24) and the Plaintiffs' Response (Doc. 25), the following facts are

undisputed:

On April 29, 2010, Plaintiff was insured pursuant to the terms and conditions of a

Commercial General Liability insurance policy issued by AMCO Insurance Company at Policy

Number ACPGLAQ5432598956. (SMF ¶ 1, Doc. 24.) The limits of the liability insurance

provided for by the Policy for each occurrence is $1,000,000.00. (*Id.* at ¶ 3.)

---

[1] Defendant's Motion asserts that AMCO Insurance Company is "incorrectly identified in the caption of this case as Nationwide Mutual Insurance." For purposes of this Motion, the Court will treat the Motion as having been jointly made by AMCO Insurance Company and Nationwide Mutual Insurance Company.

3

Danielle Berry, individually and as Administratrix of the Estate of James Berry, brought suit against Plaintiff and the Bodnarosa Campground, LLC, in the Court of Common Pleas of Luzerne County at Docket No. 13484 of 2010, over an incident occurring on April 29, 2010, that resulted in the death of James Berry (the "Underlying Lawsuit"). (*Id.* at ¶ 4.)

The Policy contains an "Employer's Liability" exclusion that provides that the insurance does not apply to

"Bodily injury" to:

(1) an "employee" of the insured arising out of and in the course of:

   (a) employment by the insured; or
   (b) performing duties related to the conduct of the insured's business; or

(2) the spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

(*Id.* at ¶ 7). AMCO/Nationwide hired and appointed George Saba, Esquire, and the law firm of Swartz Campbell to defend Plaintiff in the Underlying Lawsuit. (*Id.* at ¶ 8).

On February 8, 2011, Defendant filed a complaint for declaratory relief in the United States District Court for the Middle District of Pennsylvania, No. 3:11-CV-0989, which was dismissed on Motion of Danielle Berry by Judge A. Richard Caputo on August 4, 2011. Thereafter, on August 19, 2011, Defendant filed a second declaratory judgment action in the Court of Common Pleas of Luzerne County to No. 211-10062, which was discontinued on February 15, 2013. (Plaintiffs' Response to Defendants' SMF, Doc. 25.)

On or about August 2, 2012, Plaintiffs entered into an Agreement with Danielle Berry, individually and as Administratrix of the Estate of James Berry. (Doc. 24-4.)

4

Defendant, AMCO/Nationwide paid Danielle Berry, individually and as Administratrix of

the Estate of James Berry, the Policy's limits of $1,000,000.00, plus interest, in accordance with

the terms and conditions set forth in the Agreement. (Defendant's SMF ¶ 15, Doc. 24.)

The Agreement (Doc. 24-4) contains the following hold harmless clause:

In consideration of Bodnar's execution of this Agreement, Berry agrees to indemnify Bodnar, his agents, employees, subsidiaries and affiliates and save them harmless from any and all further liability, loss, damage, claims, or expenses arising because of the death of James Dean Berry as well as any and all liability, loss, damage or claims arising because of Bodnar's signing of this Agreement and, if necessary, in order to save Bodnar so harmless to satisfy on his behalf, any judgment against him arising in any way.

As a result of the Agreement and Defendant's payment of the Policy's limits, Plaintiff

faces no additional exposure for any damages arising out of the facts and circumstances giving

rise to the Underlying Lawsuit. (*Id.* at ¶ 17).

The Agreement was reached and Defendant's payment of the Policy's limits occurred

prior to any finding of liability on the part of Plaintiff in the Underlying Lawsuit. (*Id.* at ¶ 18).

The Agreement was reached and Defendant's payment of the Policy's limits occurred prior to

any award of damages against Plaintiff or in favor of Danielle Berry, individually and as

Administratrix of the Estate of James Berry, in the Underlying Lawsuit. (*Id.* at ¶ 19).The

Underlying Lawsuit has since been discontinued by Berry with neither a finding of liability nor

an award of damages. (*Id.* at ¶ 20).

## III.    **ANALYSIS**

### A. Standard on Motion for Summary Judgment

Through summary adjudication, the Court may dispose of those claims that do not present a "genuine issue as to any material fact". Fed.R.Civ. P. 56(a). "As to materiality, ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N.Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992) *cert.* denied, 507 U.S. 912 (1993).

### B. Discussion

Plaintiffs (Bodnar) assert two (2) counts in their Complaint against Nationwide. Count I is a claim for bad faith under 42 PA. CONS. STAT. § 8371 and Count II is a claim for breach of contract under the indemnity policy issued to the insured by Nationwide. The claims raised by Bodnar are founded on its essential assertions that "[t]he Defendant maliciously disregarded the interests of its insured, Stephen Bodnar, Individually and t/d/b/a Stephen Bodnar Masonry with its callous, unjustified and unreasonable refusal to settle the action of Danielle Berry, which

6

had been filed against Stephen Bodnar, Individually and t/d/b/a Stephen Bodnar Masonry and Bodnarosa Campground, LLC." (Amended Complaint, Doc. 17, ¶ 34.)

Plaintiffs further allege that Defendant "as a result of its actions", inflicted upon Bodnar severe emotional distress," (*id.* at ¶ 39) and caused Bodnar to suffer "severe emotional distress, anxiety, depression and psychological harm". (*Id.* at ¶¶ 40, 41).

Plaintiffs allege in Count II that Defendant "failed to make payment under its policy to Danielle Berry, even though Bodnar told the Defendant repeatedly that James Berry was not his employee at the time of the accident" (*id.* at ¶ 44) and further alleged that "notwithstanding the fact that Bodnar continuously told the Defendant that Berry was not his employee, and, as a result, should have been paid under the terms and conditions of the policy, the Defendant continued to drag out the litigation between Plaintiff and Danielle Berry." (*Id.* at ¶ 45.) Plaintiffs maintain that Defendant's breach of contract makes it liable for actual and consequential damages including "severe emotional distress, anxiety, depression and psychological harm to Bodnar." (*Id.* at ¶¶ 51, 52).

Plaintiffs further point out in their Brief in Opposition to Defendant's Motion for Summary Judgment that "Nationwide/AMCO claims that there cannot be a breach of contract because there are no resultant damages. Nationwide/AMCO ignores the fact that although discovery in this matter has not even yet begun, Bodnar has made a claim for the effect the underlying lawsuit had against his business and for the attorneys' fees he incurred in the defense of the declaratory judgment action filed against him." (Brief in Opposition at 5-6, Doc. 26.)

Defendant, on the other hand, in support of its Motion, points to the undisputed fact that "Defendant has paid Danielle Berry the Policy's limits of $1,000,000.00 plus interest on behalf of Plaintiff and in accordance with the [settlement] Agreement." (Brief in Support of Motion at 4, Doc. 23.) Thus, Defendant argues: "[t]herefore, there can be no further recovery against Defendant pursuant to the Policy, and Plaintiff cannot establish damages as a result of the alleged breach of the Policy." (Id.) The Settlement Agreement, Defendant notes, "was reached prior to any finding of liability on the part of the Plaintiff in the underlying lawsuit and prior to any award of damages against Plaintiff in the underlying lawsuit." (Id. at 6) (citing Cowden v. Aetna Cas. and Surety Co., 134 A.2d 223, 227-28 (Pa. 1957). Defendant flatly asserts: "in the absence of the possibility of an excess verdict, there is no viable common law bad faith claim against Defendant." (Id.).

With respect to Plaintiffs' statutory bad faith claim, Defendant once again asserts that there can be no viable third party bad faith claim as a matter of Pennsylvania law "because the underlying lawsuit settled without an excess verdict against Plaintiff." (Id. at 7). Defendant, citing Daniel P. Fuss Builders-Contractors, Inc. v. Assurance Company of America, Civil Action No. 06-1182, 2006 U.S. Dist. LEXIS 56742, *10 (E.D. Pa. Aug. 11, 2006), argues:

> While Pennsylvania's Superior Court and the Third Circuit Court of Appeals have interpreted the bad faith statute to include claims based upon delay in payment of other types of claims (bad faith claims arising from delay in settling first party claims or underinsured motorists claims, for example), there are no known appellate court decisions recognizing a viable third party bad faith claim based solely on delay.

(Id. at 10).

8

Counsel for Defendant acknowledged at oral argument that Defendant asserts its

entitlement to summary judgment on the sole basis that Defendant's payment of the Policy

limits establishes, as a matter of law, that it did not act in bad faith:

| The Court: | So your position would be that the decision to pay the Policy limits without more entitles you to summary judgment in this case, am I understanding that ? |
| --- | --- |
| Mr. Kaster: | Yes, it's a threshold question. Without that, it's not bad faith, as defined by the Pennsylvania Courts and Pennsylvania law. It may be something, but it's not bad faith. |

(Unofficial Transcript of Oral Argument at 2.) (See also, comments of defense counsel at Oral

Argument, Unofficial Transcript at 20, 28.)

Further, counsel for Nationwide and counsel for Bodnar agree that unless the Court

finds that Nationwide's payment of the $1,000,000.00 Policy limit fulfills, as a matter of law,

Nationwide's duty to act in good faith toward its insured, Bodnar, and precludes a finding of bad

faith on its part, there are issues of fact which would preclude summary judgment as to whether

the delay in payment of the Policy limits to the Estate of James Berry was unreasonable and,

therefore, in bad faith. (Unofficial Transcript of Oral Argument, at 10, 23.)

Resolution of the issue before me requires analysis of the decisions of the Pennsylvania

Supreme Court and the Third Circuit Court of Appeals to determine, generally, the meaning and

scope of the insurer's duty to act in good faith in fulfilling its obligations to its insured under an

indemnity policy of insurance as well as to delineate, to the extent that case law allows, the

definition of "bad faith" for purposes of the application of 42 PA. CONS. STAT. § 8371. Only by

9

such an analysis can I determine whether the issue before me, *i.e.*, whether payment by an insurer on behalf of its insured of the Policy limits to a third party, prior to any verdict, satisfies the insurer's duty to act in good faith and affirmatively precludes a claim of bad faith under Section 8371, has been determined by the Pennsylvania Supreme Court and, if not, whether the case law of the Pennsylvania Supreme Court or the Third Circuit Court of Appeals on the subject of an insurer's duty of good faith provides this Court with sufficient direction to allow it to predict how the highest court of Pennsylvania would rule on this issue.

In *Polselli v. Nationwide Mutual Fire Insurance Co.*, 23 F.3d 747 (3d Cir. 1994), the Court of Appeals, relying upon the Pennsylvania Supreme Court's decision in *Cowden*, held that, under Pennsylvania law, "bad faith on the part of an insurer must be proven by clear and convincing evidence." 23 F.3d at 750.

In so ruling, the Court also observed that "[i]n the insurance context, the term 'bad faith' has acquired a peculiar and universally acknowledged meaning:"

> *Insurance.* 'Bad faith' on the part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Id.* at 751.

Then, in *Klinger v. State Farm Mutual Automobile Insurance Co.*, 115 F.3d 230 (3d Cir. 1997), the Court returned to the definition of bad faith under Pennsylvania law in a case in which Klinger, the insured of State Farm, and Neyer, a passenger in Klinger's automobile,

10

brought suit against State Farm alleging that State Farm's delay in paying their claims was bad faith under 42 PA. CONS. STAT. § 8371. The case was tried before a jury, which awarded punitive damages to each plaintiff in the amount of $150,000.00. Klinger and Neyer were seriously injured in a collision while riding in Klinger's van, which was insured by State Farm. When the other driver's insurance was inadequate to compensate them for their injuries, they filed underinsured motorist claims against two (2) State Farm policies. Over a period from approximately October, 1993 through June, 1994, State Farm, through its representatives, delayed resolution of Klinger and Neyer's claims and denied the request made by Klinger and Neyer's counsel, for payment of the policy limits. A board of arbitrators awarded $115,000.00 to Klinger and $70,000.00 to Neyer, and State Farm paid those claims a full two (2) years after the accident. Klinger and Neyer then filed their suit for delay in payment under 42 PA. CONS. STAT. § 8371.

The Court of Appeals found that the insurer's conduct supported the jury's award of punitive damages. Its analysis of the jury verdict began with a statement of the definition of bad faith under Section 8371 as determined under Pennsylvania law:

> The standard for bad faith claims under 8371 is set forth in Terletsky v. Prudential Property & Cas. Ins. Co., 437 Pa.Super. 108, 649 A.2d 680, 688 (1994), appeal denied, 540 Pa. 641, 659 A.2d 560 (1995). There, the Pennsylvania Superior Court applied a two-part test, both elements of which must be supported with clear and convincing evidence: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis.

115 F.3d at 233.

11

The Court rejected State Farm's argument that a third element must be satisfied to

establish a claim of bad faith, that the insurer was "motivated by an improper purpose such as

ill will or self-interest." *Id.* The Court explained:

> We reject that reading of *Terletsky.* Although the definition the court recited did advert to a "dishonest purpose" such as "self-interest or ill will [.]" This is dictum. Moreover, State Farm's self-interest is the only plausible explanation for its delay. Nonetheless, we need not reach that issue: A page later the court actually applied the two-part test:

> To recover under a claim of bad faith, the Terletskys were required to show that Prudential lacked a reasonable basis for partially denying payment … and that Prudential recklessly disregarded a lack of reasonable basis in denying payment.

*Id.* at 234.

In *O'Donnell v. Allstate Insurance Co.,* 734 A.2d 901 (Pa. Super. Ct. 1999) the

Pennsylvania Superior Court held, "as an issue of first impression" with respect to the proper

scope of 42 PA. CONS. STAT. § 8371 "whether in an action for bad faith against an insurer, the

jury is restricted to considering only evidence of bad faith which occurred prior to the filing of

the lawsuit, or, whether it may also consider evidence of an insurer's bad faith conduct

occurring during the pendency of litigation." *Id.* at 905. The Court concluded "that a narrow

construction of § 8371, . . . is contrary to the purpose of the statute to deter bad faith conduct of

insurers." *Id.*

Noting that "[i]t is well settled that an insurer is obligated to act in good faith and fair

dealing with its insured," the Superior Court explained that § 8371 was adopted by the

legislature of Pennsylvania in response to the Supreme Court of Pennsylvania's refusal to

12

create a common law remedy. *Id.* The Court further noted that "[a]lthough it is not defined by the statute, our Court has adopted the following definition of 'bad faith' as applicable in the context of insurance:"

> Bad faith on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent for purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Id.* (citing *Romano v. Nationwide Mutual Fire Insurance Co.*, 646 A.2d 1228, 1232 (Pa. Super. Ct. 1994) (quoting *Blacks Law Dictionary* 139 (6th ed. 1990)); *Terletsky v. Prudential Property & Casualty Insurance Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994), *appeal denied*, 659 A.2d 560 (Pa. 1995)). The Court in *O'Donnell* continued its delineation of the reach of the bad faith statute noting that it requires the insured "to present clear and convincing evidence that 'the insured did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim.'" *Id.* (citing *MGA Insurance Co. v. Bakos*, 699 A.2d 751, 754 (Pa. Super. Ct. 1997)).

The Court then added:

> It is now clear, however, that § 8371 is not restricted to an insurer's bad faith in denying a claim. An action for bad faith may also extend to the insurer's investigative practices.

*Id.* at 906.

Next, finding the reasoning in *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104 (E.D. Pa. 1992) "persuasive," the Court in *O'Donnell* stated: "we now hold that the

13

conduct of an insurer during the pendency of litigation may be considered as evidence of bad faith under § 8371." *Id.* at 907.

The Court in *O'Donnell*, however, also found that the bad faith statute "clearly does not contemplate actions for bad faith based upon allegation of discovery violations." *Id.* at 908. The Court found "particularly illuminating" the reasoning of the Court in *Slater v. Liberty Mutual Insurance Co.*, No. CIV. A. 98-1711, 1999 U.S. Dist. LEXIS 3753 (E.D. Pa. Mar. 30, 1999) in which the federal district court "predicted that the Pennsylvania Courts would not permit recovery under § 8371 'for discovery abuses by an insurer or its lawyer in defending a claim predicated on its alleged prior bad faith handling of an insurance claim.'" *Id.* at 908. The District Court's holding in *Slater* was noted at "not preclud[ing] a finding of liability for an insurer's 'bad faith conduct arising in the insurer-insured relationship which happens to occur during the pendency of an action, or for initiating an action against an insured in a bad faith effort to evade a duty under the policy.'" *Id.* at 909.

The Pennsylvania Supreme Court in *Birth Center v. St. Paul Companies, Inc.*, 787 A.2d 376 (Pa. 2001) presented what continues to be that Court's most definitive statement on the scope of the duty of good faith owed by an insurer to its insured as well as to the elements of bad faith under § 8371. In *Birth Center*, a jury found that St. Paul acted in bad faith when it refused to settle a civil action against Birth Center and that St. Paul's bad faith conduct was a substantial factor in causing Birth Center to incur compensatory damages in the amount of $700,000. 787 A.2d at 379. The Superior Court had reversed the Order of the Court of

14

Common Pleas which granted St. Paul's motion for judgment notwithstanding the verdict. The

Supreme Court affirmed the decision of the Superior Court, stating:

> Where an insurer refuses to settle a claim that could have been resolved within
> policy limits without 'a bonafide belief . . . that it has a good possibility of
> winning,' it breaches its contractual duty to act in good faith and its fiduciary duty
> to its insured.

*Id.* (*citing Cowden*, 134 A.2d at 229).

The jury had returned a verdict in favor of the parents whose daughter suffered severe

physical injury and permanent brain damage at birth in the amount of $4,500,000 with Birth

Center being found liable for 60 percent of that amount. The final verdict after the inclusion of

delay damages and interest totaled $7,196,238. Birth Center's ultimate liability amounted to

$4,317,743. St. Paul agreed to indemnify Birth Center for the entire verdict and the parties

settled the case for $5,000,000. *Id.* at 381. St. Paul had insured Birth Center under a

professional liability policy with a $1 million policy limit. *Id.* at 379, n.4.

The Supreme Court held that the payment by St. Paul of the excess verdict did not

insulate it from liability where St. Paul had refused to engage in settlement negotiations:

> The fact that the insurer's intransigent failure to engage in settlement
> negotiations forced it to pay damages far in excess of the policy limits so as to
> avoid a punitive damages award, does not insulate the insurer from liability for its
> insured's compensatory damages where the insured can prove that the insurer's
> bad faith conduct caused damages.

*Id.* Before the trial in the underlying action brought against Birth Center, St. Paul refused to

make any offer of settlement "whatsoever." *Id.* at 380. Thereafter, St. Paul also refused a

"high/low offer of settlement, in which St. Paul would pay a non-refundable $300,000 amount

15

regardless of the verdict. If, however, the jury returned a verdict in excess of Birth Center's policy limits, the Parents agreed to accept the policy limits as total satisfaction of the verdict. The settlement offer also provided that if the jury returned a verdict lower than Birth Center's maximum coverage, but higher than the low figure of $300,000, then the parents would accept such verdict as full satisfaction of The Birth Center's liability." *Id.*

St. Paul refused to make any offer of settlement at any time before the jury returned its verdict. *Id.* As noted, the jury returned a verdict in favor of the Plaintiffs and against Birth Center.

The Court, citing its prior decision in *Cowden, supra,* emphasized that "an insurer, who acts in bad faith by unreasonably refusing to settle a case, may be liable for the full amount of a verdict notwithstanding that the verdict exceeds the insured's policy limits. . . ." *Id.* at 388, n.16. And indeed, the facts of *Birth Center* quite clearly involve an unreasonable refusal to settle a third party claim by St. Paul, the insurer, and, as a result, an excess verdict against the insured at trial which the insurer then paid on behalf of the insured. The Court then allowed the insured, Birth Center, to recover its lost profits and compensatory damages under a contractual bad faith theory as well as to assert claims under § 8371.

In so ruling, however, the Pennsylvania Supreme Court appears to have set forth principles which extend in application beyond the specific facts in *Birth Center.* While stating that "the insured's liability for an excess verdict is a type of compensatory damage for which this Court has allowed recovery," *id.* at 389, the Court then laid down a broader principle:

16

Therefore, when an insurer breaches its insurance contract by a bad faith refusal to settle a case, it is appropriate to require it to pay other damages that it knew or should have known the insured would incur because of the bad faith conduct.

*Id.* at 389.

Further, the Court's holding also appears to reach beyond the bad faith arising by a

combination of an unreasonable refusal to settle and an excess verdict:

Today, we hold that where an insurer acts in bad faith, by unreasonably refusing to settle a claim, it breaches its contractual duty to act in good faith and its fiduciary duty to its insured. Therefore, the insurer is liable for the known and/or foreseeable compensatory damages of its insured that reasonably flow from the insurer's bad faith conduct.

*Id.*

The decision in *Haugh v. Allstate Insurance Co.*, 322 F.3d 227 (3d Cir. 2003)

recognizes the decision in *Birth Center* as establishing that an unreasonable refusal to settle

may present a cause of action for breach of the duty of good faith to which an insurer must

adhere as well as for bad faith under § 8371.

In that case, the plaintiff, Haugh, was severely injured when he was struck by an

automobile driven by Uher. Uher reported the accident to his insurance carrier, Allstate

Insurance which determined, based on investigation of its claims adjuster, as well as the

photographs of the accident scene and an examination of the damage to Uher's motor vehicle

and eyewitness accounts of the accident, that Uher was not liable to Haugh. *Id.* at 228-229.

Haugh's counsel contacted the Allstate claims adjuster, Clarke, and informed Clarke that there

were "several witnesses who would state that Uher was speeding and had crossed the center

line of the roadway when he hit Haugh." *Id.* Haugh's counsel wrote a letter to Clarke stating

17

that his client would settle his claim against Allstate if it were to pay Uher's policy limit of $15,000. The offer was made available for a period of thirty days and was subject thereafter to automatic revocation if not accepted. Allstate did not advise Uher of this settlement offer and Clarke sent Haugh's counsel a letter restating Allstate's position that Uher was not liable for the accident. The offer then made by Haugh's counsel to settle for the policy limits was withdrawn. *Id.*

Haugh then filed suit against Uher seeking to recover damages for the injuries he sustained. Another Allstate insurer, Toth, who was assigned to handle the claim, informed Uher in writing that Allstate had hired an attorney to represent him in the suit and that the insurance policy limits of $15,000 might be inadequate for the amount claimed as damages and that a verdict that exceeded the policy limits would result in personal liability. Toth further stated that Uher had the right to retain his own counsel. Again, however, Allstate's representative did not inform Uher that Allstate had "declined to settle the case for $15,000 before Haugh filed his action." On September 13, 1995, fourteen months after Haugh had filed suit against Uher, Allstate offered to settle the case with Haugh for the $15,000 policy limits. Haugh rejected the offer and his case was tried and resulted in a verdict on March 13, 1998 for $740,000.

Subsequently, on May 28, 1999, Haugh acquired Uher's right to any potential bad faith claims against Allstate in exchange for Haugh's promise to refrain from executing on the judgment against Uher. Haugh, as Uher's assignee, then filed a bad faith action against Allstate on October 22, 1999 pursuant to 42 PA. CONS. STAT. § 8371. The suit claimed that

18

Allstate had shown bad faith in failing to settle the claim against Uher for the $15,000 policy limits. Haugh also advanced a separate common law cause of action for breach of Allstate's contractual duty to act in good faith. *Id*. at 230. Allstate moved for and was granted summary judgment on October 22, 2001 on the grounds that Haugh's bad faith claim brought under § 8371 was time-barred and that Pennsylvania did not recognize a separate common law bad faith action predicated on Allstate's initial refusal to settle the case.

On appeal, the Court of Appeals reversed and remanded the matter to the District Court. The Court held that the District Court had erred when it granted summary judgment on the claim by Allstate that the statute of limitations had expired. It held that Haugh's invocation of the discovery rule raised an issue of fact as to when "Uher knew or should have known of Allstate's breach of fiduciary obligation so that the statute of limitations would start running is a question of fact to be determined by the trier of fact." *Id*. at 233.[2]

As to the District Court's dismissal of Haugh's assertion of a separate common law cause of action for breach of a duty to act in good faith, the Court, while noting that the District Court "misstated the Pennsylvania law," further explained that the District Court did not have the benefit of the Pennsylvania Supreme Court's decision in *Birth Center, supra*. In explaining its view of *Birth Center*, the Court stated:

> In *Birth Center*, the Supreme Court of Pennsylvania's most recent decision addressing bad faith failure to settle, the Court explicitly rejected the interpretation of Pennsylvania law that the District Court made here. In *Birth Center*, the insurer argued that *D'Ambrosio [D'Ambrosio v. Pennsylvania Nat'l*

---

[2] The Court of Appeals concluded that "the District Court correctly predicted that the Supreme Court of Pennsylvania would hold that an action under § 8371 sounds in tort and thus is subject to a two year statute of limitations under 42 PA. CONS. STAT. § 5224(7)." *Id*. at 235-236.

19

*Mut. Casualty Ins. Co.*, 494 Pa. 501, 431 A.2d 966 (1981)] barred the plaintiff's claim for breach of the obligation to act in good faith. The Supreme Court stated that 'where an insurer acts in bad faith, by unreasonably refusing to settle a claim, it breaches its contractual duty to act in good faith and its fiduciary duty to its insured'. *Birth Center*, 787 A.2d at 389. The Court specifically stated that '8371 . . . does not alter Birth Center's common law contract rights. . . . The statute does not reference the common law, does explicitly reject it, and the application of the statute is not inconsistent with the common law. Consequently, the common law remedy survives.'

*Id.* at 236. The Court in *Haugh* further observed that:

the majority opinion and Justice Nigro's concurring opinion in *Birth Center* made clear that § 8371 does not supply the exclusive cause for action for suing an insurer for breach of the duty to act in good faith and made clear that an insurer's bad faith refusal to settle a claim can give rise to a contract cause of action.

*Id.*

The Court also found that the Supreme Court in *Birth Center* had affirmed the Superior

Court's decision "that it was at that time 'well-settled Pennsylvania law' that insurers have a

contractual duty to act in good faith when making decisions to settle." *Id.* at 237 (citing *Birth*

*Center v. St. Paul Cas., Ins.*, 727 A.2d 1144, 1159 n.9 (Pa. 1999)).

Clearly, the Third Circuit recognized that under *Birth Center*, "an insurer assumes a

fiduciary responsibility towards its insured and is therefore obligated to act in good faith and

with due care when it represents the interests of the insured when dealing with third-party

claims brought against the insured." *Id.*

While acknowledging that an insurer "is not under an absolute duty to settle a claim

when a possible judgment against the insured may exceed the amount of coverage," the Court

in *Haugh* stated:

20

[w]e are satisfied that under Pennsylvania law an insurer does not comply with the good faith standard when it refuses to settle merely because it believes that its insured is not liable for the claim asserted. See Shearer v. Reed, 286 Pa.Super. 188, 428 A.2d 635, 638 (1981). 'An insurer does not satisfy the good faith standard merely by showing that it acted with sincerity.' Birth Center, 727 A.2d at 1156.

Id. Further, the Court summarized the requirements with which an insurer acting in good faith

must comply:

In fact, an insurer acting in good faith must consider 'all of the factors bearing upon the advisablity of a settlement for the protection of the insured.' Shearer, 428 A.2d at 638 (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 333 A.2d 495, 503 (1974)). As the Court stated in Shearer, '[W]hile the view of the carrier or its attorney as to liability is one important factor, a good faith evaluation requires more. It includes consideration of the anticipated range of a verdict, should it be adverse; the strengths and weaknesses of all of the evidence to be presented on either side so far as known; the history of the particular geographic area in cases of similar nature; and the relative appearance, persuasiveness and likely appeal of the claimant, the insured and the witnesses at trial.'

Id. at 238.

Thus, without question, the duty of good faith imposed upon insurers in dealing with

their insured extends to the manner in which the insurer discharges its obligations of defense

and indemnification in the context of third party claims brought against its insured. See Toy v.

Metro. Life Ins. Co., 920 A.2d 186 (Pa. 2007).

Yet, the Pennsylvania Supreme Court has not specifically held that the insurer's duty of

good faith and fair dealing owed to the insured can be violated where there are allegations of

unreasonable delay in settlement together with related allegations of a failure to timely and

properly conduct an investigation and assessment of the claims brought against the insured as

well as other allegations of breach of the insurer's duties owing to the insured in the claims evaluation process where, as here, the parties agree that, ultimately, the insurer, Nationwide, paid the policy limits of $1 million on behalf of its insured to a third party without the entry of an excess verdict or any verdict. Or, to state the matter in perhaps its most simple form: the Pennsylvania Supreme Court has not ruled as to whether the payment by an insurer on behalf of its insured of the policy limits to a third party prior to any verdict operates, without more, to fulfill the insurer's duty of good faith owing to its insured.

This precise question, however, has arisen in other courts within this circuit. Thus, in *Daniel V. Fuss Builders-Contractors, Inc. v. Assurance Company of North America*, Civil Action No. 06-1182, 2006 WL 2372226 (E.D. Pa. Aug. 11, 2006) the District Court addressed the precise issue which is now before this Court:

> Plaintiff presents this Court with a novel issue: whether Pennsylvania law recognizes a bad faith cause of action against an insurer who ultimately settles a third party insurance claim within policy limits before an excess verdict has been entered.

2006 WL 2372226, at *1.

In *Fuss*, the defendant insurance company refused to settle a claim brought against Daniel Fuss Builders for negligent construction of a berm to retain excess water runoff. Fuss acknowledged that his work was negligent and the cause of the damages to the third party in the amount of $168,000. Fuss requested that the claim be settled but the insurance company refused to do so and instead filed an answer to the third parties complaint denying Fuss Builders' liability without Fuss Builders' knowledge or consent. During litigation, the lawyers for

22

the insurance company failed to update Fuss Builders regarding the litigation and continued to

deny Fuss Builders' liability even though Fuss made numerous admissions of its liability.

Daniel Fuss himself testified at his deposition that Fuss Builders was at fault for the damages

that the third party, Morgan, suffered. Yet, the insurance company continued to deny Fuss

Builders' liability from late 1999 through January 21, 2004 when the defendants made a

settlement offer of $156,240 which the third party accepted.

The District Court noted that "in the context of first party claim or under insured motorist

claims, both the Pennsylvania Superior Court and the Third Circuit Court of Appeals have

interpreted § 8371 to include delay of payment by an insurer." But the Court further noted:

> However, the Court has failed to uncover a single federal or state court in
> Pennsylvania that has recognized a cause of action for an insurer's delay of
> payment in the context of a third party claim brought under § 8371 or a
> contractual bad faith claim.

2006 WL 2372226, at *3.

The District Court in *Fuss* rejected the plaintiffs' contention that the decision in *Birth*

*Center, supra,* recognized a cause of action for unreasonable refusal to settle a third party

claim. In its view, the Supreme Court in *Birth Center*:

> did not address an insurer's *delay* in settling a third party claim in *Birth Center,*
> but instead it maintained the insured's right to recover compensatory damages
> for contractual bad faith when its insurer unreasonably *refused* to settle such
> claim. *See Birth Center,* 787 A.2d at 384-388. The Pennsylvania Supreme
> Court simply did not address the situation the Court confronts here, nor has any
> other federal or state court in Pennsylvania. This Court will not create a cause of
> action not yet recognized by Pennsylvania law.

23

*Id.* at \*4. The Court in *Fuss* found that under Pennsylvania law "there is no recognized cause of action against an insured for delaying settlement of a third party claim." *Id.*

Two years later, in *Gideon v. Nationwide Mutual Fire Insurance Co.*, Civil Action No. 07-40E, 2008 WL 768724 (W.D. Pa. Mar. 20, 2008) the District Court, noting its disagreement with the analysis by the court in *Fuss*, denied the insurance company's motion to dismiss the plaintiffs' complaint which alleged that Nationwide had a reasonable opportunity to investigate a lawsuit filed against plaintiff by a third party; that it initiated and continued a declaratory judgment action to trial and failed to settle promptly the underlying lawsuit and thereby breached its contract with the plaintiff and engaged in bad faith under § 8371.

In *Gideon*, the insured fired a handgun which caused a bullet to strike a third party, Fitzsimmons. Fitzsimmons brought a lawsuit against the plaintiff alleging claims for negligence, battery and punitive damages. Plaintiff then informed his insurance company of the underlying suit, and Nationwide in turn sent a reservation of rights letter to the plaintiff. Thereafter, on March 28, 2003, Nationwide filed a declaratory judgment action in the Court of Common Pleas of McKean County. Nationwide then unsuccessfully sought summary judgment, the court determining that it could not conclude as a matter of law that plaintiff intended to shoot Fitzsimmons, a ruling that did not resolve the issue of Nationwide's responsibilities under its policy of insurance with plaintiff. Nationwide then sought leave to file and filed a second amended complaint in which it alleged a new theory of exclusion, specifically, that the actions of the plaintiff were not an "occurrence" under the policy. The declaratory judgment action was submitted to trial. The jury found that the plaintiff did not intend to shoot Fitzsimmons and the

24

court, upon the jury's finding, entered an order in the declaratory judgment action which directed Nationwide to provide coverage for plaintiff in the underlying lawsuit. Plaintiff was required to retain counsel to defend the declaratory judgment action and to monitor the defense of the underlying lawsuit. *Id.* at *3. Plaintiff's lawsuit against Nationwide asserted that it had breached its contractual obligations to plaintiff "in failing to provide indemnity coverage" for the acts of the insured; "in failing to settle the Underlying Action promptly, after having a reasonable opportunity for investigation;" "in failing to perform a reasonable and timely evaluation of the claim of Aaron Fitzsimmons;" and "in engaging in a pattern of conduct designed to frustrate and delay the resolution of the claim" of Fitzsimmons in the underlying lawsuit and thereby "forcing its insured, Terry L. Gideon, to incur attorney's fees and costs in defending the Declaratory Judgment Action and in monitoring the Underlying Lawsuit, which Terry Gideon would not have had to incur but for the actions of Nationwide." *Id.* at *3.

The Court in *Gideon*, like the Court in *Fuss*, acknowledged that "the Pennsylvania Supreme Court has not spoken directly on the issue before us . . . ." *Id.* at *4.

Citing the decision in *Highlands Insurance Group v. Van Buskirk*, No. Civ. A. 98-CV-4847, 1999 WL 377099, at *1 (E.D. Pa. June 9, 1999) where the court held that an insurer "that assumes the defense of the insured with the reservation of rights and then files a declaratory judgment action seeking a declaration that it is not obligated to defend the insured under an insurance policy can be held liable for attorney's fees incurred by the insured in defending the declaratory judgment action," the Court concluded that the actions of an insurer which delay

settlement of a third party claim, if undertaken in bad faith, give rise to a cause of action for

breach of the implied duty of good faith and fair dealing:

> we conclude that if an insurer provides a defense, reserves its rights, and files a declaratory judgment action, said conduct constitutes a denial of an insured's claim. Therefore, if the insurer's conduct is done in bad faith, a plaintiff can sue for breach of an implied duty of good faith and fair dealing and recover attorneys fees.

*Id.* at \*4. The Court in *Gideon* reasoned:

> To hold otherwise would allow an insurance company to treat its insured unfairly, such that its insured is forced to hire an attorney in order to receive the benefits of his insurance policy that he is rightfully entitled to, and yet, in the end, not have to pay for the costs of said attorney only because after being ordered by a court to defend said insured, the insurance company pays up. This is conduct that this Court opines the Pennsylvania Supreme Court would not condone. Accordingly, defendant's motion to dismiss plaintiffs breach of contract claim for failure to state a claim upon which relief can be granted is denied.

*Id.* Thus, the Court in *Gideon* found that the insurer's conduct amounted to a denial of benefits

so that a bad faith claim could be asserted.

In this case, unlike *Gideon*, Nationwide did not pay the $1 million policy limits after being

ordered by a court to defend Stephen Bodnar. But the *Gideon* Court's citation to *O'Donnell*

identifies the elements of a bad faith claim which may be asserted notwithstanding the ultimate

payment of the claim by the insurer on behalf of its insured:

> [g]enerally, success in bringing a claim of bad faith requires the insured to present clear and convincing evidence that 'the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim.' It is now clear, however, that § 8371 is not restricted to an insurer's bad faith in denying a claim. An action for bad faith may also extend to the insurer's investigative practices . . . .

*Id.* at 6.

The decision in *Gideon* was followed in *Standard Steel, LLC v. Nautilus Insurance Company*, Civil Action No. 08-195, 2008 WL 4287156 (W.D. Pa. Sept. 17, 2008). There, the insurer, Nautilus, argued there can be no claim for bad faith refusal to settle a third party claim where no excess verdict has been entered. *Id.* at *3. The Court noted that Nautilus failed to cite any Pennsylvania case law with that express holding and offered its view that the Pennsylvania Supreme Court in *Birth Center*, "did not opine that an excess verdict is a prerequisite to a statutory bad faith claim." *Id.* at *4.

The Court in *Nautilus*, relying upon *Gideon*, and declining to follow *Fuss Builders*, concluded:

> absent Pennsylvania caselaw or statutory text which supports NIC's position that an excess verdict is a condition precedent to a statutory bad faith claim for failure to settle a third party claim, we do not impose such a requirement here.

*Id.*

From the treatment of the issue before this Court by those courts which have addressed it thus far, it is my view that Nationwide may not avoid further inquiry into its conduct in connection with its handling of the claims of Danielle Berry and the Estate of James Berry against Bodnar, Nationwide's insured, by asserting its ultimate payment of the policy limits to Danielle Berry as a complete defense entitling it to summary judgment as a matter of law.

That is not to say that an insurer's delay in the settlement of a claim, standing alone, presents a cause of action for breach of contract or bad faith. But it is equally the case that an insurer's payment of the policy limits prior to a verdict cannot insulate an insurer from claims of

27

breach of contract and bad faith in connection with its conduct prior to its payment. A delay in payment of a third party claim, if of inordinate and unreasonable length, effectively becomes a denial of the claim as assuredly as if the denial was swiftly and unequivocally communicated to the insured. This is particularly the case when the insurer's conduct over a substantial period of time is consistent with or suggests the absence of a good faith intent to resolve the claim for the benefit of its insured.

Thus, allegations of a failure to conduct a complete and thorough investigation of the facts giving rise to the claim, or the law supporting it, the refusal to enter into good faith settlement negotiations or the conduct of "surface" negotiations undertaken with no genuine intent to find a basis for settlement, the rejection without counterproposal of all offers made by the third party for settlement, the filing and pursuit of actions for declaratory judgment without a reasonable evidentiary basis for doing so, if persisted in for an unreasonable period of time, will state a cause of action for breach of contract and for bad faith even if ultimately, after the insured has been prejudiced by the insurer's conduct delaying resolution of the claim against it, the insurer pays the policy limits prior to the entry of a verdict.

The "frivolous or unfounded refusal to pay proceeds of a policy," *O'Donnell, supra,* or the lack of "a reasonable basis for denying benefits and the insurer's knowing or reckless disregard of its lack of reasonable basis", *Klinger, supra* (quoting *Terletsky, supra,* at 234), do not require a fixed, permanent refusal to pay the proceeds of a policy for a finding of breach of the insurer's duty of good faith; it is enough if the payment is delayed for an inordinate and unreasonable period of time during which the insurer's conduct violates its good faith duty to

28

fairly evaluate the claim against its insured, including the risk of an excess verdict at trial, to conduct good faith settlement negotiations, to follow proper claims handling techniques, to consider the record evidence and to pursue declaratory judgment actions only for legitimate reasons, with factual support. This is so even if the insurer should ultimately pay the policy limits before the entry of an excess verdict, or any verdict. The delay that ensues from the insurer's violation of its duty of good faith and fair dealing or its bad faith conduct will present a basis for the recovery of damages by the insured where such damages are caused by the insurer's bad faith conduct engaged in prior to its payment of the policy limits.

## IV.   CONCLUSION

For these reasons, Nationwide's Motion for Summary Judgment will be denied. In so ruling, I express no opinion as to the merits of Plaintiffs' claims, any attempt at the determination of which must be deferred, at least until the conclusion of discovery. A separate Order follows.

Robert D. Mariani
United States District Judge