IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEPHEN BODNAR, et al.,

        Plaintiffs,

v.                         3:12-CV-01337
                            (JUDGE MARIANI)
AMCO INSURANCE CO.,

        Defendant.

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is a Motion for Reconsideration (Doc. 186) of our Order granting summary judgment in favor of the Defendant (Doc. 185). For the reasons that follow, the Court will deny the Motion.

### II. Factual Background and Procedural History

The factual background of this case has been summarized extensively elsewhere. (*See, e.g.*, Mem. Op., Sep. 15, 2015, Doc. 184, at 1-16.) By way of summary, the case involves claims for breach of the duty of good faith and fair dealing and for bad faith against the Defendant insurance company when it refused to indemnify the policyholder Plaintiff Stephen Bodnar after a worker, one James Berry, died during a construction accident on Bodnar's property. The Opinion that follows is written primarily for the benefit of the parties and therefore will assume knowledge of the factual details of this case.

After extensive discovery on Plaintiff's two claims, Defendant filed two motions for summary judgment. (*See* Docs. 114; 160.) Oral argument was held on those motions on February 18, 2015. (*See* Oral Argument Tr., Feb. 18, 2015, Doc. 182.) On September 15, 2015, this Court issued a Memorandum Opinion and Order granting the Defendant's Motion. That Opinion began by noting:

> During oral argument, counsel for moving Defendant Nationwide Insurance Company stated:
>> Regarding the issues of fact, I think, if you look at the facts, we all agree on what the facts are. We disagree on what they mean. I'm not getting up here saying a witness didn't say this, he's not getting up here saying a document doesn't say that.
>> There's no issue on that, we agree on the facts, we disagree on what they mean . . . .

(Doc. 184 at 1-2 (quoting Doc. 182 at 65:8-14) (internal footnote omitted).) The Court "agree[d] with this assessment." (*Id.* at 2.) As it explained:

> The statements of fact accompanying the two motions for summary judgment are voluminous and contain extensive denials. However, a review of the bases for each denial indicates that Plaintiffs object primarily to the interpretation that Defendant places on certain facts, or that Plaintiffs believe that other facts of record are more important or otherwise undercut reliance on the facts that Defendant highlights. Both sides appear to agree on what actually happened during the period of time that gave rise to this cause of action, as memorialized most clearly in Nationwide's claims file. Thus, all of the facts recounted below are undisputed. There are no disputed facts aside from these, but only disputed interpretations of these facts.

(*Id.*) The Court then went on to consider whether the undisputed record—particularly the claims file, which was submitted by the nonmoving Plaintiffs, (*see id.* at 6 n.4)—showed either bad faith or a breach of the duty of good faith and fair dealing. Ultimately, it

2

determined that the record did not. Both claims require some showing of breach of duty or unreasonableness. (*See generally id.* at 20-22.) But in this case, the claims file contained information that could reasonably lead to contrary conclusions: i.e., it could reasonably support both denial and payment under the terms of the policy. Because the information known to the Defendant at all relevant times was therefore ambiguous, the Court concluded that the evidence of record did not support a cause of action for either claim. It summarized the issue as follows:

> It is easy to focus on the details of Nationwide's claims handling. But we must keep in mind the larger picture. Nationwide received a claim that required it to determine the working relationship of two men who had only worked together for a few weeks before one's untimely death, kept their dealings "under the table," and reduced nothing to writing. The claims file reflects information that indicates that Berry variously could have been an employee, a temporary worker, or independent contractor. Nonetheless, Nationwide still paid for Bodnar's defense in the underlying lawsuit. Faced with ambiguous facts, it also submitted the case separately to court for a declaration of Berry's legal status. Then, before such a declaration was ever issued, Nationwide discontinued its action and paid Bodnar's designee the full limits of his insurance policy.
> 
> The Court is willing to assume, for summary judgment purposes, that the weight of the evidence in the claims file suggested that Berry was a temporary worker and that Bodnar was owed coverage. It is willing to assume, for the same purposes, that the claims handlers made judgment calls with which a third-party observer could defensibly disagree. But it cannot agree that Nationwide's documented actions were unreasonable, given the facts it knew at the time, sufficient to sustain a bad faith action or an action for breach of contract. Despite Plaintiffs' repeated invocations of the Golden Rule, (*see, e.g.*, Oral Argument Tr. at 48:11-14), the record does not suggest that Nationwide gave Bodnar any other treatment than that which he was owed as a policyholder. Its duty was to pay claims made against Bodnar only if coverage were owed under the terms of his policy. Nationwide investigated the issue, determined that it did not owe him coverage, and then ultimately decided to pay the policy limits to James Berry's Estate anyway. Plaintiffs

3

may not like how the claim was handled, but it cannot be said that Nationwide breached any duty under these facts.

(*Id.* at 35-36.) Accordingly, the Court entered summary judgment in favor of the Defendant. (*See* Order, Sep. 15, 2015, Doc. 185, at ¶ 2.) Plaintiffs then filed the instant Motion for Reconsideration, (*see* Doc.186), which alleges a plethora of errors in the Court's Opinion.

## III. Standard of Review

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).

> Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Moreover, "motions for reconsideration should not be used to put forward arguments which the movant . . . could have made but neglected to make before judgment." *United States v. Jasin*, 292 F. Supp. 2d 670, 677 (E.D. Pa. 2003) (internal quotation marks and alterations omitted) (quoting *Reich v. Compton*, 834 F. Supp. 753, 755 (E.D. Pa. 1993) (*rev'd in part and aff'd in part on other grounds*, 57 F.3d 270 (3d Cir. 1995)). Nor should they "be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Donegan v.*

4

*Livingston*, 877 F. Supp. 2d 212, 226 (M.D. Pa. 2012) (quoting *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002)).

## IV. Analysis

Plaintiffs' Motion for Reconsideration argues the third ground for reconsideration, namely, "that the Court's grant of Summary Judgment arose out of a misapplication of the law and if allowed to stand, would work a manifest injustice upon the Plaintiffs." (Pls.' Br. in Supp. of Mot. for Recons., Doc. 187, at 24.) The Plaintiffs argue that the Court incorrectly applied the summary judgment standard because it "ma[de] conclusions unsupported by the record and credibility determinations reserved for the jury." (*Id.* at 4-5.) They then list, in sixteen numbered paragraphs, "a summary of the facts, and corresponding law, which if believed by a jury would constitute bad faith." (*Id.* at 5.) Plaintiffs represent these "facts" as follows:

1. "Nationwide sold a policy that had no definition of 'employee' AND no reference materials available to its employees to assist with this definition: . . . Further, Nationwide knew it had no methodology for analyzing the facts of a claim in the context of its policy language." (*Id.* at 6.)

2. "The policy sold to Bodnar was in conflict with Nationwide's own training materials requiring policy definitions to full explain terms and conditions." (*Id.*)

3. "Nationwide failed to initiate, conduct and maintain a good faith and unbiased investigation, but instead began with a mind set [*sic*] of denial without having

5

any facts in its possession as shown by [a log entry from Joseph Bottger]." (*Id.* at 7.)

4. "When the third party adjuster, Jamison, was asked what this instruction from Nationwide's supervising technical specialist meant to him he testified he thought it meant to look for an exclusion." (*Id.* at 8.)

5. "Jamison further testified this instruction did not change." (*Id.*)

6. "Nationwide itself, through its 30(b)(6) designee, confirmed that this attitude was maintained during the entirety of the claim." (*Id.*)

7. "Nationwide, through its 30(b)(6) designee, further admitted that it did not have a reasonable basis to deny the claim, and knew it did not have a reasonable basis, since it had no idea what had changed between the filing of the declaratory judgment action and its decision to pay its policy limits." (*Id.* at 8-9.)

8. "Nationwide could articulate no good faith basis for 'arguing' James Berry was an employee at the time it denied Berry's claim on November 8, 2010." (*Id.* at 9.)

9. "Contrary to the multiple representation made by Nationwide to this Court, Nationwide did in fact deny the claim as clearly set forth in the casualty claims summary showing that liability was denied December 8, 2010 based upon the 'employee' exclusion." (*Id.*)

10. "The same casualty claims summary contains Nationwide's admission that it knew that Cardinal Insurance, Bodnar's workers' comp carrier, had denied coverage." (*Id.*)

11. "All of the documentary evidence contained in Nationwide's claims file at the time of the denial had been supplied by the Berry Estate." (*Id.* at 9-10.)

12. "Nationwide gathered no documents independently." (*Id.* at 10.)

13. "Nationwide claimed reliance upon the existence of a workers' compensation claim, allegedly made by Berry, but developed no facts to determine the validity of this information. Rather than concluding an investigation, Nationwide blindly accepted this hearsay, unreliable claim which was aligned with its conclusion that Berry was an employee rather than pursuing the information which would have shown no claim was being pursued and no claim had been paid." (*Id.*)

14. "Likewise, Nationwide gratuitously claims reliance upon an OSHA investigation, which likewise was aligned with its denial of coverage based upon its conclusion that Berry was an employee, when it never obtained any OSHA information in the declaratory judgment action, but then, impermissibly, had its coverage adjuster, Lambrecht, obtain it from the third party adjuster, Jamison, who received it from George Saba, Nationwide's assigned defense counsel in the third party action." (*Id.*)

15. "At the time of the denial in December 2010, all of the documentary evidence in Nationwide's possession, which had been supplied by counsel for Berry's Estate, objectively demonstrated Berry not to be an employee and included the only checks issued by Bodnar Masonry were after his death." (*Id.* at 10-11.) Plaintiffs then list several cherry-picked pieces of evidence to support this position. (*Id.* at 11.)

16. "The claim file shows Nationwide undertook no common law analysis of the relationship between Bodnar and Berry" despite being on notice of the Supreme Court's decision in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992).

Virtually none of these paragraphs contain information that is either new or factual. Thus:

- Paragraphs 1 and 2 rely on legal arguments about policy terminology that this Court already rejected on page 31 of its Opinion (Doc. 184). As discussed in section III, *supra*, a motion for reconsideration is not properly used to merely rehash past, unsuccessful arguments.

- Likewise, paragraph 3 contains only rhetoric and legal conclusions about documents that the Court already considered and rejected at pages 7-8 and 33 of its Opinion.

- Paragraphs 4-6 contain mere argument implying that Nationwide acted improperly by "looking for an exclusion." The Court addressed a similar argument at page 25-26 of its Opinion and concluded that there was nothing wrong about Nationwide seeking a determination of whether Bodnar's claim was covered under the policy he purchased.

- Paragraphs 7-8 do not describe an actual admission, but only Plaintiff's interpretation of the legal significance of a statement that the 30(b)(6) designee made. The legal significance of this change in position was discussed at pages 28-30 of the Court's Opinion and found not indicative of bad faith.

- As to paragraph 9, there is no question that, as of December 8, 2010, Nationwide did not pay Bodnar's claim. However, there is also no question that Nationwide did pay his claim later and that, in the intervening time, it continued to provide Bodnar with a legal defense in the underlying tort suit. (*See, e.g.*, Doc. 184 at 3, 5, 16.) Thus, it is unclear how paragraph 9 has any significance to this Court's decision.

- Paragraph 10 repeats information that the Court discussed at page 13 of its Opinion. (*See id.* at 13 ("A later entry [in Nationwide's claims file] confirms that Workers' Compensation insurance was in fact denied.").) Thus, the Court has never disagreed with the Plaintiffs that this fact exists in the record.

9

- Paragraphs 11-12 have no ascertainable legal significance.

- Finally, paragraphs 13-16 get to the heart of the Court's Opinion granting summary judgment. Plaintiffs are correct to note that contradictory evidence existed in the claims file, that the Workers' Compensation and OSHA information was not by itself dispositive, and that the evidence of record contained in the claims file could support a decision to pay Bodnar's claim. However, as the Court noted in its Opinion, "evidence existed [in the claims file] which pointed in both directions." (*Id.* at 32.) The issue was not whether some evidence of record taken alone supported the provision of coverage; it was whether the record as a whole rendered a decision to not immediately provide coverage either bad faith or a breach of the duty of good faith and fair dealing.

At bottom, then, Plaintiffs complaint that the Court made impermissible credibility determinations and findings of fact misconstrues the very nature of our Opinion. That Opinion recognized the existence of all the facts of record that Plaintiffs now cite. The task before us on summary judgment, then, was: considering all of the facts of which the summary judgment record shows that Nationwide was aware, whether a decision to deny coverage could as a matter of law be in bad faith or in breach of the duty of good faith and fair dealing. It was precisely because so many pieces of contradictory evidence existed that we concluded that it could not. That is, to establish bad faith the Plaintiffs would need to

show that the Defendant acted without a "reasonable basis for denying benefits," (see id. at 21 (quoting *Terletsky v. Prudential Property & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super Ct. 1994)), while to establish a breach of good faith and fair dealing, they would need to show that Defendant somehow dealt with Bodnar unfairly, (see id. at 20 (citing *Dercoli v. Pennsylvania Nat'l Mut. Ins. Co.*, 554 A.2d 906, 909 (Pa. 1989)). But because evidence existed in the record that provided a "reasonable" basis for denying coverage—even if Plaintiffs believed it was an unpersuasive basis—then these claims must fail as a matter of law.

In deciding this, it is important to note that the Court made no findings of fact or credibility determinations. Indeed, we wrote that "[t]he Court is willing to assume, for summary judgment purposes, that the weight of the evidence in the claims file suggested that Berry was a temporary worker and that Bodnar was owed coverage." (*Id.* at 36.) But, even viewing all evidence in the light most favorable to the Plaintiffs cannot negate the fact that *some* evidence, memorialized in the summary judgment record, provided a reasonable basis for Nationwide's actions in determining coverage under the policy. This being the case, the Plaintiffs' claims were precluded as a matter of law. Because the ultimate issue was the legal significance of the evidence of record, there were no facts for the jury to find.

The arguments that Plaintiffs raise in the remainder of their Brief in Support of Reconsideration suffer from the same defects as those above.

First, they reiterate their argument, asserted numerous times in their opposition briefs to summary judgment and at oral argument, and which the Court considered and rejected in its summary judgment Opinion, that "[w]hat the record before the Court actually shows is in fact that Nationwide did begin with a predisposition of EXCLUSION and that it clearly and convincingly maintained this binding characterization," "that Nationwide turned a blind eye toward objective evidence contrary to its conclusion," and that Nationwide thereafter "did no further investigation." (See Doc. 187 at 13-16.) This is duplicative of many of the purportedly overlooked "facts" discussed above, and is rejected for the same reasons. In any event, the Court considered and rejected this argument at pages 25-29 of its Opinion. In moving for reconsideration, the Plaintiffs again advance no substantively new evidence or arguments to call our decision into question, but merely attempt to relitigate their own interpretation of the summary judgment record as against that of the Court.

Second, the Plaintiffs quarrel with the Court's statement that Nationwide's duty as an insurer was to "discover whether Berry's death was in fact an excluded occurrence." (Id. at 18 (quoting Mem. Op. at 26).) Plaintiffs assert that, to the contrary, "[w]hat the record before the Court actually shows is in fact that Nationwide had a duty to search for coverage not an exclusion."[1] (Id.) This, however, is merely a dispute over semantics. As the Court made

---

[1] Technically, of course, "the record" does not and could not show this, as Nationwide's legal duties are questions of law, not questions of fact. The Court only highlights this point because Plaintiffs' statement is indicative of a strain of confusion running through their reconsideration filings, in which Plaintiffs attempt to characterize questions of law as material disputes of fact. As emphasized above, all of the material questions in this case are questions of law properly addressed by this Court on summary judgment and beyond the jury's scope as finder of fact.

12

clear in its Opinion, Nationwide's duty was to determine whether coverage existed. Whether this obligation is framed positively ("searching for coverage") or negatively ("searching for an exclusion") makes no substantive difference for Plaintiffs' claims, so long as the investigation was done in good faith. In other words, even if Nationwide "searched for an exclusion," this would not necessarily be in bad faith if the exclusion actually applied to Bodnar's policy and did in fact bar him from coverage. Because here there were enough facts to reasonably lead Nationwide to believe that an exclusion existed, the Court concluded that there could not as a matter of law be bad faith. This would be true regardless of whether Nationwide happened to seek out the exclusion or whether it only came to it by surprise after looking for other ways to allow coverage. Nothing in Plaintiffs' submissions undermines this conclusion.

Finally, Plaintiffs argue that the Court committed error by supposedly relying on Cheryl Kovaly's legal advice to grant summary judgment when that advice had never been disclosed and when the Defendant explicitly refused to waive its privileged status. (*See id.* at 20-24.) Plaintiffs believe that "[i]t is obvious" from the Court's discussions of Kovaly's advice that the Court drew "a factual inference that the advice 'only lead [*sic*] to a determination to file a declaratory judgment action, not to deny coverage.'" (*Id.* at 23 (quoting Mem. Op. at 29).)

The Court's discussion of this issue reads as follows:

Nationwide argues that it only made this decision [to switch from considering Berry a temporary worker to considering him an employee on November 8] on

13

> advice of its counsel, Cheryl Kovaly. Indeed, the claims file reflects certain discussions with counsel at this time. (*See* p. 12, *supra*.) However, those discussions are redacted, which means that the Court cannot judge whether they by themselves provided a reasonable basis for Nationwide to conclude that Berry was in fact an employee.
>
> While being able to read Kovaly's advice would certainly clarify this matter, the Court cannot find that the redaction affects its summary judgment decision. For one reason, whatever Kovaly's advice was, it only led to a determination to file a declaratory judgment action, not to deny coverage. As discussed above, (*see* pp. 27-28, *supra*), a decision to seek a judicial determination on whether coverage existed is not indicative of bad faith or breach of contract, especially when, as here, the implications of the background facts at issue are legally ambiguous.

(Doc. 184 at 28-29.)

The Court believes it is clear that it in no sense relied on Kovaly's advice. The Court merely held that "whatever Kovaly's advice was" it led to a decision that was defensible given the state of the factual record, i.e., to file a declaratory judgment action when the parties' relationships were legally unclear. Thus, the mere fact that Nationwide switched positions cannot be indicative of bad faith if the new position that it embraced is itself reasonable given the facts that Nationwide knew. In reaching this conclusion, the Court made clear that it did not matter what Kovaly's advice actually was, because, whatever it was, the record showed that nothing that could be considered bad faith followed from it.[2]

However, there is one kernel of truth in Plaintiffs' Motion for Reconsideration. In discussing Kovaly's privileged advice, the Court wrote that "it is significant that the Plaintiff

---

[2] Nor is it an unwarranted factual inference for the Court to say that Kovaly's advice only led to the filing of a declaratory judgment action. The undisputed record does indeed show that the investigation stopped and that Nationwide initiated a declaratory judgment action shortly after Kovaly provided her advice.

14

never moved to compel disclosure of Kovaly's advice and never argued that summary judgment should be denied because the advice was not disclosed." (*Id.* at 29.) Plaintiffs remind the Court that "Plaintiffs had, in fact, moved to compel production of the 'legal file' maintained by the Defendant (doc. 40) . . . ." (Doc. 187 at 22.) This is correct. Then, on October 8, 2013, the Court issued an Order holding that Motion to Compel Production of the Legal File in abeyance, by consent of the parties,

> until such time as the Court has presented to it (1) deposition testimony in which Plaintiff contends one or more of Defendant's representatives purport to put legal advice at issue as an element of their case and/or (2) portions of such depositions where attorney-client privilege was invoked as a reason for one or more of Defendant's representative to not answer a question posed to them, which Plaintiff submits show Defendant's presentation of a claim or defense through the disclosure or description of an attorney-client communication.

(Order, Oct. 8, 2013, Doc. 57, at 1.)

The Court recognizes that it was wrong to state that "Plaintiff never moved to compel disclosure of Kovaly's advice." But this slight error of procedural history had no effect on our summary judgment decision. First, in the intervening two years between the time that the Court held the Motion to Compel in abeyance and the time it granted summary judgment, Plaintiffs never argued that the predicates for disclosure set forth in the Order had been met. Indeed, as Plaintiffs point out in their own brief, Defendant has consistently refused to waive its legal privilege. (Doc. 187 at 22-23.) Thus, even though Plaintiff did seek disclosure at one point, it never argued that it was entitled to it as part of the summary judgment record or that summary judgment should be denied because it was not disclosed. (*Cf.* Doc. 184 at

15

29-30 (discussing why Plaintiffs' alternative summary judgment arguments fail).) Moreover, for the reasons discussed above and in the Court's summary judgment Opinion, the actual content of Kovaly's advice was irrelevant. The Court has repeatedly made clear that the claims file by itself—even when the alleged "about-face" is left unexplained by Kovaly's redacted advice—does not give rise to a bad faith of breach of duty claim. (*See, e.g., id.* at 29 ("Plaintiff only argued that Nationwide's 'about-face' was unexplained by the claim file. But such an argument fails on its merits, because, as discussed *passim*, there was contradictory information in the claim file, of which Nationwide was subjectively aware, to suggest in the alternative that Berry was Bodnar's employee and that he was a temporary worker. . . . Given the ample amount of conflicting information existing in this case, it cannot be bad faith or a breach of contract for Nationwide to equivocate between two defensible positions. *Thus, even an unexplained change of mind cannot advance Plaintiffs' claims in this case. Even if we were to assume that the 'about-face' was entirely unexplained and ignore the fact that Nationwide actually did seek legal advice, no bad faith or breach of contract would follow.*") (emphasis added).) Thus, because the Court did not actually rely on Kovaly's advice, its misstatement of Plaintiffs' attempts to obtain that advice made no difference to its decision.

## V.   Conclusion

For the foregoing reasons, Plaintiffs' Motion for Reconsideration (Doc. 186) is **DENIED**. A separate Order follows.

                                                 */s/ Robert D. Mariani*
                                                 Robert D. Mariani
                                                 United States District Judge